FILED

03/29/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 15, 2017 Session

## AKILAH LOUISE WOFFORD, ET AL. v. M.J. EDWARDS & SONS FUNERAL HOME INC., ET AL.

Appeal from the Chancery Court for Shelby County
No. CH140197      Jim Kyle, Chancellor

No. W2015-02377-COA-R3-CV

This appeal arises from the certification of a class. Numerous individuals ("Plaintiffs"), some next of kin and some who had contracted for funerals of loved ones, filed suit against certain funeral homes ("Defendants") in the Chancery Court for Shelby County ("the Trial Court"). Plaintiffs alleged that the funeral homes abandoned human remains to an unlicensed cemetery, Galilee Memorial Gardens ("Galilee"), where the remains were disposed of improperly. Plaintiffs sought to bring their claims, which include breach of contract and a request for equitable relief, as a class. After a hearing, the Trial Court granted class certification. Defendants appeal to this Court. We find and hold, *inter alia*, that the Trial Court did not abuse its discretion, and we find no error by the Trial Court in granting class certification. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Thomas P. Cassidy, R. Scott Vincent, and, Steve N. Snyder, Memphis, Tennessee, for the appellant, N.H. Owens & Son Funeral Home, Inc.

John R. Branson and Jacob A. Dickerson, Memphis, Tennessee, for the appellants, M.J. Edwards & Sons Funeral Home, Inc., M.J. Edwards-Whitehaven Chapel, Inc. d/b/a M.J. Edwards Whitehaven Funeral Chapel, and M.J. Edwards Hillside Chapel, Inc. d/b/a M.J. Edwards Funeral Home Stage Road Chapel.

Andrew H. Owens, Memphis, Tennessee, for the appellant, Millington Funeral Home, Inc.

David J. Cocke, Memphis, Tennessee, for the appellant, N.J. Ford and Sons Funeral Home, Inc.

Albert G. McLean and Kevin D. Bernstein, Memphis, Tennessee, for the appellant, Christian Funeral Directors, Inc.

Richard Sorin and R. Scott McCullough, Memphis, Tennessee, for the appellants, James E. Herndon, III individually and d/b/a J.E. Herndon Funeral Home, LLC; R.S. Lewis & Sons Funeral Home, LLC and J.A. Lofties Funeral Home and James F. Lofties.

Garrett M. Estep, Memphis, Tennessee, and, Jason A. Lee, Nashville, Tennessee, for the appellant, Harrison's Funeral Home, Inc.

Dawn Davis Carson, Russell B. Jordan, and, Hal S. (Hank) Spragins, Jr., Memphis, Tennessee, for the appellant, SLS, LLC d/b/a Superior Funeral Home Hollywood Chapel.

Robert A. Talley, Memphis, Tennessee, for the appellants, Preston Jefferson, Individually and d/b/a Jefferson Mortuary.

Kathryn E. Barnett, Nashville, Tennessee, for the appellee, Akilah Louise Wofford.

## OPINION

## Background

Plaintiffs filed suit against Defendants alleging that the defendant funeral homes wrongly abandoned the remains of Plaintiffs' loved ones at an unlicensed cemetery, Galilee, through a period from 2011 to 2014. The purported number of burials during the relevant period is 1,288. Galilee is alleged to have used improper methods in disposing of human remains, including burying multiple bodies in a single grave and crushing caskets with a backhoe in order to make room for more burials in a grave. A receiver was appointed for Galilee.

Plaintiffs filed their first class action complaint in February 2014 in the Trial Court. There are two categories of Plaintiffs: those who signed contracts with the funeral homes and next of kin who did not sign a contract. Plaintiffs filed a series of amended complaints, ultimately stating a number of specific causes of action including breach of contract, breach of fiduciary duty, reckless and negligent mishandling of remains, and a request for equitable relief in the form of location and identification of the loved one's remains. Defendants argued throughout that they are separate entities from Galilee, that they conduct funerals not burials, and that they have no additional duty either contractual

or otherwise beyond entrusting the remains to the cemetery, after which the remains become the cemetery's responsibility. Plaintiffs' theory, on the other hand, rests upon an argument that Defendants did have a duty to ensure a proper burial after the remains had been handed over to the cemetery. This appeal is not dispositive of the merits as it concerns only the questions of jurisdiction, standing, and whether class certification was appropriate.

In November 2015, following a hearing, the Trial Court entered a detailed order granting class certification, stating as follows, in relevant part:

## B. PROPOSED CLASS DEFINITION

The named Plaintiffs moved this Court for certification pursuant to Tenn. R. Civ. P. 23 of a class of families affected by the events at Galilee, defined as:

All those who are or were next of kin[1] of any decedent delivered to Galilee for burial from January 1, 2011 through January 31, 2014; and

all persons or entities who were parties to any contract with any defendant regarding funeral arrangements for a decedent who was delivered to Galilee for burial from January 1, 2011 through January 31, 2014.

The class is defined to exclude any class member who timely elects to be excluded from the class, and any class member who has obtained other legal representation and has commenced a separate lawsuit as of the date of certification. However, any potential class member who is participating in a separate lawsuit may elect to join the class. The class excludes the defendants, including any parent, subsidiary, affiliate or controlled person of these entities and their officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

\*\*\*

---

[1] Next of kin for purposes of this class is defined pursuant to *Akers v. Buckner-Rush Enterprises, Inc.*, 270 S.W.3d 67 (Tenn. Ct. App. 2007).

-3-

## D. THE COURT'S FINDINGS

The Court finds that this case meets the requirements for class certification under Rule 23.01 and Rule 23.02.

## I. NUMEROSITY

Under Tenn. R. Civ. P. 23.01, class certification is appropriate where the class is so numerous that joinder of all members is impractical. When class size reaches substantial proportions, the impracticability of joinder requirement is usually satisfied by the number alone. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996), *see also Isabel v. Velsicol Chem. Corp.*, 2006 WL 1745053, at *3-4 (W.D. Tenn. 2006) (Hon. Bernice Donald). Thus, when the number of class members exceeds forty, the numerosity requirement is generally deemed satisfied, *Ham. v. Swift Transp. Co., Inc.*, 275 F.R.D. 475 (W.D.Tenn. 2011) (citations omitted). Other factors to consider include the need to avoid a multiplicity of actions and the interests of judicial economy. *Id*. Plaintiffs have the burden of establishing the number of the members of the class and also that joinder is not practicable. *Albriton v. Hartsville Gas Co.*, 655 S.W. 2d 153, 155 (Tenn. Ct. app. 1983) (citing *Cash v. Swifion Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970)).

Galilee's records indicate that, from January 1, 2011 through November 2, 2013, some 1,288 decedents were buried at Galilee. In total, this case's class includes the next of kin of hundreds of decedents who were to be buried at Galilee between January 1, 2011 through January 31, 2014, as well as the individuals who contracted for the funeral services for those decedents. Defendants deny that joinder is impractical, arguing that a very large percentage of potential Plaintiffs have already been named and successfully joined in both this case and the related matters of the Chancery Court Part III *Stevens* case and the Circuit Court *Anderson* case. Defendants further argue that Plaintiffs have failed to meet their burden of providing specific, identifiable evidence or proof to show that joinder is impracticable.

The Court finds that Plaintiffs have effectively met their burden of providing specific, identifiable evidence or proof to show that joinder is impracticable. It is undisputed that there are at least 1,288 deceased individuals in the purported class, some of whom are part of this lawsuit and some of whom are not. Therefore, the Court finds the Plaintiffs'

argument that the class is too numerous for practicable joinder to be well-taken.

## II. COMMONALITY

Tenn. R. Civ. P. 23.01(2) requires that, for certification of a class, there must be questions of law or fact that are common to the class; the commonality test is qualitative rather than quantitative. *Robinson v. EMI Music Distribution Inc.*, 1996 WL 49551, at *1 (Circuit Court of Tennessee, 2015). Where a common course of wrongful conduct is alleged, commonality is most easily demonstrated. *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988), *see also Newberg on Class Actions*, § 3.10 ("When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more elements of that cause of action will be common to all of the persons affected . . . ."). A common nucleus of facts is usually enough to satisfy the commonality requirement of Rule 23.01(2). *Robinson*, 1996 WL 495551, at *2. Finally, separate issues of law and fact regarding damages do not negate class action certification. *Meighan*, 924 S.W.2d at 637.

Defendants argue that the commonality bar is not met by Plaintiffs because each claim of the proposed class representatives will require extensive, individualized proof. However, in this case, regardless of whether it was Plaintiff family member or some other authorized person on Plaintiffs' behalf who contacted and met with the Defendant funeral home, all Plaintiffs came away with the same basic understanding that the Defendant would provide appropriate funeral services. Furthermore, all members of the proposed class have been victims of a common course of conduct: they suffered the death of a loved one, they entrusted their loved one's remains with a funeral home Defendant for the purpose of providing a respectful and lawful final disposition by burial at Galilee, and they relied upon contracts they entered with the funeral homes based upon:

> the uniform contractual duties owed by the funeral home Defendants;

> the uniform fiduciary duties owed by the Defendants to these families;

the uniform standard of care applicable to the funeral homes and to the Galilee Defendants;

the uniform elements of the common law tort of mishandling of remains; and

the uniform conduct on the part of the funeral home Defendants of abandoning the remains at Galilee.

Plaintiffs' breach of contract claims present numerous common questions, questions that lie at the heart of each of the claims. Regardless of any differences between the agreements made between the various Plaintiffs and various Defendants (whether these agreements were written, oral, or "handshake" in nature), the respective Plaintiffs came away from meeting the respective Defendant funeral homes with the understanding that there would be a proper disposition of the decedent remains. While the exact duty of the Defendant funeral homes and whether such duty was breached is disputed, there is no dispute that the contracts between the funeral home Defendants and each and every class representative and class member included a federally-required line item for "Basic Services of a Funeral Director." Therefore, central to the breach of contract claims of each and every class representative and the class member is the common question of whether "Basic Services of a Funeral Director and Staff" includes the supervision and ensuring of the proper, lawful final disposition of the remains. It is clear that, at the beginning of the process, pursuant to the Tenn. Code Ann. § 62-5-101(6) (A), the funeral home takes possession of the remains, and then, at some point in time, the duty to provide a proper burial shifts to the cemetery. Tennessee law further mandates that, "no employee or member of any firm or corporation shall engage in the care, preparation, disposal or burial of dead bodies ... unless the employee or member is a licensed funeral director." Tenn. Code. Ann § 62-5-313(a). In fact, the Board of Funeral Directors has issued civil penalties for funeral homes that "conducted committal and internment service of the decedent without employing the services of a funeral director licensed to conduct services in Tennessee,"  and "conduct[ing] committal and interment services in Tennessee without a Tennessee funeral director present and in charge of the services." Ex. 3, Civil Penalties.

The common question of what obligations, if any, federal and state regulations impose on funeral directors regarding the burial of remains must be answered for each and every class member and class representative.

Therefore, the Court finds that the requirement of commonality is met in that each Plaintiff had the same common expectation for what was going to happen with the deceased, and that expectation was that the body would be, with certainty, properly managed. Certainty is the very thing these Plaintiff families contracted for with these Defendants. As set forth in the expert witness disclosure for Shun Newbern:

> It is recognized in the profession that learning that there is any uncertainty about the treatment of or final resting place of a loved one's remains reasonably and expectedly disrupts the grief process and causes serious emotional distress. The foundation of a funeral professional's services is providing families with certainty that they have entrusted their loved one's remains to professionals who will care for, protect and ultimately provide for the disposition of the remains in a lawful, dignified, appropriate manner. In the case of a traditional casketed burial, this includes ensuring the remains are laid to rest in a meaningful place permanently, for the family and for future generations. Learning that the location of the remains is uncertain or unknown, losing the certainty that a loved one's remains were treated at all times with the utmost dignity and/or learning that those who came into contact with the remains demonstrated disrespect and disregard for the remains is devastating, leading to expected and reasonable emotions of violation and betrayal, as well as guilt, worry, disappointment, inadequacy and failure.

Ex. 4, at 8. Likewise, licensed funeral director Charles Crawford's disclosure explains:

> The loss of certainty about the honor, dignity and respect a loved one's remains were provided and the loss of certainty about the final resting place of a loved one's remains are serious emotional harms. Certainty and respect are exactly what the bereaved seek when entrusting the remains of their

loved one to a funeral professional and are exactly what the bereaved need in the grieving process.

## III. TYPICALITY

Under Tenn. R. Civ. P. Rule 23.01(3), a class can only be certified if the claims of the class representatives are typical of the claims of the class members. A class representative's claim is typical if it arises from the same event, practice or course of conduct that gives rise to the claims of the other class members and if his claims are based on the same legal theory. *Freeman*, 229 S.W.3d at 703 (*citing In re Am. Med. Sys.,* Inc., 75 F.3d 1069, 1082 96th Cir. 1996). The claims and defenses do not have to be identical, so long as a common element of fact of law exists between the claims. *Ham*, 275 F.R.D. 475, at 484-485. A class representative's claims are typical when there is a common element of fact or law, even if the claims do not involve the same facts or law. *Freeman*, 229 S.W.3d at 703.

The essence of the typicality requirement is ensuring that the class representative's interests are aligned with those of the representative group, such that the named Plaintiff will also advance the interests of the class members. *Roberts v. McNeill*, 2011 WL 662648, at * 6 (Tenn. Ct. App. 2011). Thus, when the class representatives will have to prove essentially the same elements as the remainder of the class, typicality should be found, notwithstanding factual differences between various members of the class. *Robinson*, 1996 WL 495551, at * 3 (Tenn. Circuit Court, 1996) (*citing Brown v. Cameron-Brown Co.* [1982-2 TRADE CASES ¶ 64,874], 92 F.R.D. 32, 38 (E.D.Va.1981).

While Defendants respectively argue factual difference between their relationships with purported class representatives, it is clear that regardless of the particular facts of each burial, each burial was to be done at Galilee, making each experience by the family members typical of each other. Further, none of the individual differences between the burials are material to the legal theories underlying these cases, nor are they relevant to the Defendants' practices and course of conduct that gives rise to the class members' claims. There were uniform contractual, fiduciary, statutory and professional duties owed by each of the Defendants. For the funeral home Defendants, there was a uniform course of conduct in delivering remains to Galilee. The families' individual details are irrelevant to the underlying, pivotal common questions surrounding the nature and scope of the Defendants' contractual, fiduciary, professional and statutory duties,

-8-

whether those duties were breached, the common defenses, and the equitable relief sought by the Plaintiffs. Thus, the Court finds that the class representative's claims are typical of the claims of the class members.

## IV. ADEQUACY OF REPRESENTATION

Finally, Tenn. R. Civ. P. 23.01(4) requires that the representative Plaintiffs will fairly and adequately protect the interests of the class. To meet this criterion, the class representatives must have common interests with the unnamed class members and it must appear that the class representatives will vigorously prosecute the case and protect the interests of the class through qualified counsel. *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir.) *cert. denied*, 429 U.S. 870 (1976), *see also Robinson*, 1996 WL 495551, at *3.

The adequacy requirement is met in this case, as the named Plaintiffs' interests are united with those of the class they seek to represent, and the counsel they have retained to bring this litigation are competent and experienced in the field of complex civil litigation, including class actions and the prosecution of desecration and mishandling of remains claims.

The named Plaintiffs' interests are co-extensive with those of the class. They, like the class members, suffered direct injury to their legal rights when their loved ones' remains were delivered to a cemetery that Plaintiffs allege mishandled, stacked, crushed and lost remains. They share the class members' interest in obtaining the requested compensatory and punitive damages, and the requested equitable relief from the Defendants. In no way are any of the named Plaintiffs' interests antagonistic to those of the class. They will fairly and adequately represent the class' interests as this litigation proceeds.

Further, it is undisputed that undersigned counsel are members in good standing of the Tennessee bar and have a background in prosecuting complex and class action lawsuits. The Court finds that undersigned counsel are more than capable of providing adequate representation for the purported class.

## V. TENN. R.CIV.P. 23.02(2)

Certification of a class action under Rule 23.02(2) is appropriate where "the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole." This Rule applies in cases in which injunctive or declaratory relief is the predominate relief sought. *Meighan*, 924 S.W.2d at 636.

The Complaint contains claims for both damages and equitable relief. This Court need not determine whether legal or equitable claims predominate, or certify all claims under a single subsection of Rule 23. The Court may treat each claim individually and certify under Rule 23.02(2) only those claims in which equitable relief predominate under the provisions of Rule 23.03(4). *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898-99 (7th Cir. 1999).

While Defendants allege that equitable relief, and not damages, must be the primary demand for a class action to be suitable, the Court agrees with the Plaintiff that the equitable relief sought in this case is particularly suited to class treatment, because it must be undertaken on behalf of all families whose loved ones' remains were delivered for burial at Galilee to be effective. The historical purpose of Rule 23.02(2) certification is to bind all those presently or subsequently interested in the subject matter to the final decree. Additionally, the need for equitable remedy has arisen from the Defendants' actions with regard to the class as a whole. Accordingly, certification of the Plaintiffs' claims for equitable relief is appropriate under Rule 23.02(2).

## VI. TENN. R. Civ. P. 23.02(3)

Under Tenn. R. Civ. P. 23.02(3), class certification is appropriate when common questions of fact or law predominate over any individual questions and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Court finds that this case meets both criteria.

• **Common Issues Predominate**

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.* (Halliburton 1), 563 U.S. 804, 131 S.Ct. 2179, 2184 (2011). To satisfy the predominance requirement, a Plaintiff must establish that issues that are

subject to generalized proof and thus applicable to the class as a whole predominate over those issues that are subject to only individualized proof. *Beattie v. Century Tel.. Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). Significantly, Rule 23 requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits. in favor of the class. *Rockos v. Procter & Gamble Co.*, 2015 WL 4978712, at *18 (6th Cir. 2015) (*citing Amgen*, 133 S.Ct. at 1191). A failure of proof on any of the common elements of one of the class claims would not result in individual questions predominating the litigation, but instead would end the claim. *Id*.

It is well established that the existence of separate issues of law and fact, particularly regarding damages, do not negate class certification. *Meighan*, at 637, *see also Ham*, 275 F.R.D. at 487-488. Even if separate factual issues of individual damages remain, common legal and factual issues, including the nature of the claim and of the relief, can predominate. *Id*. Moreover, class certification should not be denied merely because some class members may be subject to individual defenses. *Beattie*, 511 F.3d at 564, *see also City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 533 (M. D. Tenn. 2010).

Defendants argue that mass torts are inappropriate for class certification. While Plaintiffs agree that some tort cases have been found inappropriate for class treatment, Plaintiffs maintain that cases involving the widespread desecration and mishandling of remains are uniquely appropriate for class certification. Unlike some types of tort cases, widespread mishandling of remains cases involve core, predominant common questions, including the existence and scope of contractual, professional and regulatory duties owed to grieving families. These cases also present common defenses - such as blaming the State and arguing about the level of proof required of what befell each decedents' remains. In addition, mishandling of remains cases do not present a myriad of complicated, individual medical and toxicological causation defenses. Instead, while the amount of damages is an individual issue, it has long been recognized that desecration and mishandling of remains reasonably and expectedly causes significant suffering and emotional distress. *Hill v. Travelers Ins. Co.*, 294 S.W. 1097, 1098 (Tenn. 1927).

For these reasons, and contrary to the Defendants' assertions, the circumstances of this case are particularly appropriate for class certification.

To summarize, some of the common questions that predominate this litigation include:

whether the Defendants had a contractual or professional duty to ensure and supervise the burial of the remains,

whether the Defendants breached any such duties,

whether the Defendants breached any fiduciary duties in their conduct,

whether the Defendants had a statutory duty to ensure and supervise the burial of the remains,

whether the Defendants breached any such duty,

whether the Defendants' conduct constituted mishandling of remains,

whether the class members may recover despite the fact that the Defendants actions have left them without knowledge of the specific mishandling that befell their loved ones' remains,

whether the funeral home Defendants are directly or vicariously liable for the actions of the Galilee Defendants,

whether the injuries to the class representatives and class members was a reasonably foreseeable harm,

whether and to what extent the State of Tennessee should share fault,

whether the Defendants would be unjustly enriched by retaining the benefits conferred upon them under the circumstances, and

whether and to what equitable relief the class is entitled.

The answers to these common questions do not vary based on the sorts of differences that are inherent in the uniqueness of every death, and

-12-

of every grieving family. The Plaintiffs' claims are not differentiated by such factors as the individual class member's relationship to the decedent, the particulars of the ceremony for the decedent's remains, whether the payment to Galilee was delivered by the family directly or through the funeral home, the number of times a family went to visit Galilee after the burial, or the amount of time that has passed since the decedent's death. None of these variables has any bearing upon the funeral home's duty to ensure that the decedent's remains were treated with the highest degree of dignity and respect, or the question of whether the funeral homes' duties included ensuring and supervising the final disposition of the remains. Certainly, every family that seeks a funeral home's services will be unique; the funeral home's contractual, fiduciary, statutory and professional duty to those families regarding the disposition of the remains, however, does not vary.

Class certification is appropriate because of the predominance of common issues, each of which will be determined based upon common proof, expert testimony and legal authority.

**• A Class Action Is Superior**

The Court finds that a class action is the superior method for adjudicating this controversy. Importantly, a class action need not be perfect; it must merely be the superior method. Tennessee courts recognize that class actions are superior where, as here, the Defendants' liability can be determined on a class-wide basis because the claims rest on a single course of conduct which is the same for all class members. *Freeman*, 229 S.W.3d at 706. Proceeding with this matter as a class action would be superior here because "the common issues will only have to be heard and decided once, thereby promoting judicial efficiency." *See City of Goodleitsville*, 275 F.R.D. at 534, *see also Meighan*, 924 S.W.2d at 637-638 (finding a class action superior because otherwise the matter, "could result in hundreds of lawsuits in dozens of courts occupying dozens of judges. Inconsistent decisions regarding the trespass and punitive damages claims would be likely. Separate appellate decisions with differing results are no less likely.")

While a major individual issue among each family is the amount of emotional damages arising from their claims, the Court finds that these damages should be dealt with individually, if necessary, after a trial on the common issues of liability.

Other "pertinent" factors for consideration in determining if a class action is the superior method for adjudicating the controversy include (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Tenn. R. Civ. P. 23.02(3). These factors weigh in favor of certification of a class in this case.

Regarding the first two factors, it is plain that the vast majority of those individuals impacted by this course of conduct prefer to have the common issues in their cases resolved through a class action trial. In addition to the named Plaintiffs in this action, the families of the more than 550 decedents filed suit in the *Stevens* case, explaining that they seek to participate as class members in *Wofford*. *Stevens et al. v. JM&M Services, Inc. et al.*, Case No. CH-4-1772, at ¶1-2. Hundreds of additional class members have not yet filed suit and thus have indicated no interest in controlling this litigation. The small minority of class members who are pursuing claims in Circuit Court (less than 15% of the families who have filed suit arising from this matter), are not included in the class definition — although they would be free to join the class. Even if none of those individuals joins this case, proceeding with this class action is still superior because this case would still provide the opportunity to avoid hundreds and hundreds of individual trials on the common issues.

Regarding the third factor, concentrating this litigation in this forum is desirable because the majority of witnesses, evidence and parties are in and around Shelby County, Tennessee, because Galilee cemetery is located here, as are the remains that are the subject of this action and because each Defendant transacted business here. Furthermore, the Chancery Court has the ability to consider the parties claims for equitable relief as well as damages.

Finally, allowing the case to proceed as a class action will not be unmanageable. The Court need only consider and apply the laws of one State in this matter and the contracts and underlying professional and fiduciary obligations of the Defendants are uniform. Further, despite the relatively large number of parties, all counsel have worked cooperatively, efficiently and effectively to conduct the discovery and motions practice

-14-

necessary. Any complications of trying these common issues together in one trial would be far outweighed by the prospect of having to conduct more than 550 individual trials, over and over again, on the same fundamental issues.

The superiority of a class trial of the common issues in this case is especially evident when considering the alternative. The families of more the 550 decedents each have claims to pursue. Without a class approach to the common questions, they will each need to present and re-present the same evidence over and over and over—either in a massive consolidated trial, or in hundreds and hundreds of individual trials. Each case would present the same contractual terms, the same evidence and argument about the statutory, fiduciary and professional obligations of the Defendants. Each case would present the same evidence of the conduct of the Defendants. Each case would present the same evidence about the scope of the discoveries at Galilee, the desecration of remains there and the utter lack of any reasonable records for determining where any remains rest, or to what treatment any were subjected. Rule 23 provides the tool needed to avoid this unnecessary, lengthy drain on the Court's and the parties' resources. With a class trial on the common issues, the common issues at the heart of this case can be tried and decided once, with a single judge and jury — instead of more than 550 times. For this reason, a class action is the superior method for adjudicating this controversy.

E. **CONCLUSION**

Based on the submissions of the parties, the arguments and statements of counsel in open court, the Court's findings, and the entire record in this action, the Court finds that Plaintiffs' Motion for Class Certification is well taken and the Court grants the same in its entirety. The Court finds that Plaintiffs have shouldered the burden of proof under Rule 23 in order for a class to be certified.

(Footnote in original). In May 2016, the Trial Court entered an order on a Rule 60 motion as follows:

This cause came before the Court on April 22, 2016, on the Motion of M.J. Edwards & Sons Funeral Home, Inc., M.J. Edwards-Whitehaven Chapel, Inc. d/b/a M.J. Edwards Whitehaven Funeral Chapel, and M.J. Edwards Hillside Chapel, Inc. d/b/a M.J. Edwards Funeral Home Stage Road Chapel (referred to collectively hereinafter as "the Edwards Entities")

-15-

for Relief Pursuant to Rule 60.02 ("the Motion"), pursuant to an Order on Motion of M.J. Edwards & Sons Funeral Home, Inc. for Limited Remand entered by the Court of Appeals on March 1, 2016.

Having considered the Motion and the Memoranda and Affidavits and exhibits submitted in support of and in opposition to the Motion, the arguments of counsel, all of the pleadings and materials and oral arguments presented for the Plaintiffs' Motion for Class Certification, and the entire record in the cause, the Court finds and decrees as follows:

1. For the reasons set forth in this Court's Order Granting Plaintiffs' Motion For Class Certification, November 4, 2015, and for the reasons set forth by this Court on the record, the transcript of which is attached hereto as Exhibit 1, the Edwards Entities' Motion to Alter or Amend is denied. The Court's Order Granting Plaintiffs' Motion For Class Certification is hereby reaffirmed and all of the Edwards Entities are included in the Court's certified class.

2. The Court further finds that there are no factual differences as to the individual Edwards Entities that would lead to different results on the Plaintiffs' Motion For Class Certification, and thus the Order applies equally to each of the Edwards Entities.

3. The Court further finds and rules that the arbitration clauses contained in some or all of the Edwards Entities' contracts do not make the Edwards Entities "outliers" relative to the other Defendants, and do not render the claims of Ms. Wofford atypical of the claims of the class members. Nor do such clauses impact the predominant, common liability issues underlying this litigation.

4. The Court further finds and rules that Ms. Wofford is an adequate class action representative. There has been no prejudice to any party arising from Ms. Wofford's actions or knowledge and her level of understanding of the case is about the same as that of other litigants in Shelby County, Tennessee.

Finally, in July 2016, the Trial Court entered an order entitled "Order on Objection to a Portion of Plaintiffs' Designation of Additional Parts of the Record for Appeal Filed June 13, 2016 and Motion to Strike Filed by the Edwards Entities." The Trial Court therein addressed the issue of standing, stating:

-16-

The Court takes notice of Plaintiffs' arguments, as set forth in the pleading entitled Response to Edwards Defendants' Motion to Alter or Amend, and as vocalized by counsel at the hearing, as set forth in the transcript of the hearing, a true and correct and genuine copy of which is attached hereto and incorporated herein by reference. Specifically, Plaintiffs argued that they had submitted and relied upon in their pleadings and at the hearing on this matter all of the transcripts at issue in this Motion. However, the Court decided not to include these depositions in the appellate record because the Court's ruling was not based upon information contained in those transcripts. The Court stated all of the plaintiffs were the same irrespective of their status as a contract holder or next of kin with regards to the expectation of what was to happen and the appropriate and proper disposal of the body. The Court added that no Defendant argued at the hearing that the named plaintiffs lacked standing or were not next of kin of or contract signatory for services rendered for the decedents. As such, the Court did not review the transcripts on this issue. Should that issue be raised as a new issue on appeal, the transcripts are available to establish standing of each named class representative, including Ms. Wofford. As the Court did in the Order entered by the Court on March 1, 2016 regarding an earlier issue with the record on appeal, the Court states that should the Court of Appeals want to see any of the materials that this Court has excluded from the record by way of this Order, the Court of Appeals can so notify this Court and the materials will be provided.

Defendants timely filed an appeal to this Court.[2]

## **Discussion**

Defendants filed multiple briefs raising a number of issues. Accounting for redundancy, we consolidate the unique, dispositive issues raised by Defendants as follows: 1) whether the Trial Court lacked subject matter jurisdiction; 2) whether Plaintiffs lack standing to bring this class action; 3) whether an arbitration clause contained in some funeral contracts with MJ Edwards entities defeats commonality for purposes of class action; and, 4) whether the Trial Court abused its discretion and erred in granting class certification.

---

[2] Tenn. Code Ann. § 27-1-125 permits an appeal from a grant or denial of class certification. *See Haiser v. Haines*, No. E2013-02350-COA-R3-CV, 2014 WL 7010723, at *2 (Tenn. Ct. App. Dec. 12, 2014), *no appl. perm. appeal filed* ("Plaintiffs appealed the denial of class certification to this Court as allowed under Tenn. Code Ann. § 27-1-125.").

-17-

This Court previously has articulated the standard of review for a trial court's grant or denial of class certification:

A trial court's decision on class certification is entitled to deference. *See Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 637 (Tenn. 1996). The grant or denial of class certification is discretionary, and the court's decision will stand absent abuse of that discretion. *Id.* (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). The abuse of discretion standard typically applies when a choice exists in the trial court among several acceptable alternatives. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) ( citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Because the trial court is vested with the responsibility to make that choice, a reviewing court cannot second-guess the lower court's judgment or merely substitute an alternative it finds preferable. *Id.* at 524 (citations omitted). A reviewing court must instead affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). The same principles apply here; a trial court's certification decision must stand if reasonable judicial minds can differ about the soundness of its conclusion. *Freeman v. Blue Ridge Paper Prod., Inc.*, 229 S.W.3d 694, 703 (Tenn. Ct. App. 2007) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Beecher*, 312 S.W.3d at 524 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

A trial court's discretion is not unbounded. *Cf. Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L.Ed.2d 693 (1981). A trial court must consider controlling legal principles and relevant facts when making a discretionary decision. *Beecher*, 312 S.W.3d at 524 (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb,* 320 S.W.3d 246, 249-50 (Tenn. 2010) (citation omitted); *see also Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 308 (Tenn. 2008) (citation omitted). Additionally, a trial court abuses its discretion if it "strays beyond the applicable legal standards or when it fails to properly

consider the factors customarily used to guide the particular discretionary decision." *Beecher*, 312 S.W.3d at 524 (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

Appellate courts review a trial court's discretionary decision to determine "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* at 524-25 (citing *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008)). We review the trial court's legal conclusions *de novo* with no presumption of correctness. *Id.* at 525 (citing *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)). We review the trial court's factual conclusions under the preponderance of the evidence standard. *Id.* (citations omitted).

\*\*\*

Rule 23 of the Tennessee Rules of Civil Procedure governs class action certification. *Walker*, 249 S.W.3d at 307 (citing *Hamilton v. Gibson Cnty. Util. Dist.*, 845 S.W.2d 218, 225 (Tenn. Ct. App. 1992)). The burden is on the proponent of class certification to demonstrate that a class action is appropriate. *Id.* This burden is two-fold. The proponent must first satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23.01. *Id.* at 307-08 (citing Tenn. R. Civ. P. 23.01). Rule 23.01 permits class certification if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Tenn. R. Civ. P. 23.01. The proponent of class certification must demonstrate compliance with each of Rule 23.01's requirements. *Walker*, 249 S.W.3d at 307-08.

The proponent must next establish the class action is maintainable under Rule 23.02. *Id.* at 308. In contrast to Rule 23.01, the proponent of class certification must establish only one Rule 23.02 basis for the maintenance of a class action. *Id.* Rule 23.02 provides three bases for class action certification:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interest; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

Tenn. R. Civ. P. 23.02. Class certification is permissible only if the proponent demonstrates compliance with both Rule 23.01 and Rule 23.02. *Freeman*, 229 S.W.3d at 702 (citing *Hamilton*, 845 S.W.2d at 225).

*Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *3-5 (Tenn. Ct. App. Feb. 23, 2011), *no appl. perm. appeal filed*.

This Court has discussed class certification and the accompanying need for a "rigorous analysis" further as follows:

Because a rigorous analysis is a prerequisite to certification of a class, most courts have held that where such an analysis is not performed by the trial court, or where the record does not clearly reflect such an analysis, the certification decision must be overturned, just as it must if the order reflects the application of incorrect standards. *See Elizabeth M. v. Montenez*, 458 F.3d 779, 788 (8th Cir. 2006); *Stirman v. Exxon Corp.*, 280 F.3d 554, 566 (5th Cir. 2002), *citing Castano v. Am. Tobacco Co.*, 84 F.3d at 740; *Wachtel v. Guardian Life Ins. Co. of America*, 453 F.3d 179, 185 (3d Cir. 2006) ("a sufficient certification order must, in some clear and cogent form, define the claims, issues, or defenses to be treated on a class basis"); *Chemtall Inc. v. Madden*, 607 S.E.2d at 783 (holding that where the order on class certification does not reflect that the court conducted a thorough analysis and fails to set forth detailed findings, the certification should be reversed); *Bill Heard Chevrolet Co. v. Thomas*, 819 So.2d 34, 40 (Ala. 2001) (holding that the certification order failed to meet the rigorous analysis standard because the order "fail[ed] to identify the elements of the four claims being certified for class treatment and fail[ed] to discuss in a cogent manner how those elements bear upon the criteria in Rule 23"); *Washington Educ. Ass'n. v. Shelton School Dist. 309*, 613 P.2d 769, 793 (Wash. 1980) (holding that a trial court abused its discretion in refusing to certify a class "without appropriate consideration and articulate reference to the criteria of [the class action rule]").

\* \* \*

The trial court has the responsibility to conduct its own inquiry into whether the requirements of Rule 23 have been met. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003). In this case, that means an evaluation of whether common questions of law or fact predominate over individual questions and whether class action provides the superior method of resolving the claims.

-21-

The extent and components of a thorough or rigorous analysis necessary for a class certification decision depend upon the claims and defenses presented, the type of class certification requested, the issues raised regarding the compliance with the rule's requirements, the members of the purported class, and other questions presented by the particular case and the requirements of Rule 23. The trial court must "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d at 744; *see also Carroll v. Cellco Partnership*, 713 A.2d at 512.

***

Where the trial court fails to look beyond the pleadings and conduct a rigorous analysis of the issues, the case must be remanded to permit the trial court to make that analysis and to make the findings required by Rule 23. *Geriarty v. Grant Thornton, LLP*, 368 F.3d at 367 (the trial court indicated it was relying on plaintiff's assertions regarding the factual issue of the efficiency of the market which triggered the presumption of reliance).

*Gov't Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *8, 14, 22 (Tenn. Ct. App. June 29, 2007), *no appl. perm. appeal filed*.

We first address whether the Trial Court lacked subject matter jurisdiction. According to Defendants, the next of kin Plaintiffs pursue only unliquidated damages and chancery court lacks subject jurisdiction to adjudicate their claims. Plaintiffs argue in response that their case is rooted in breach of contract, and the chancery court has concurrent jurisdiction to adjudicate the remaining claims as well.

Regarding a chancery court's subject matter jurisdiction and the potential for concurrent jurisdiction, this Court has discussed as follows:

Tennessee Code Annotated Section 16-11-102 gives chancery courts concurrent jurisdiction with circuit courts for most claims. As is relevant to this case, the statute excepts, from the chancery courts' jurisdiction, claims for unliquidated damages "not resulting from a breach of oral or written contract." Inferentially, then, concurrent jurisdiction between the chancery and circuit courts remains intact for claims for unliquidated damages that

do result from a breach of oral or written contract. The question, then, is whether CCO and Tennison's causes of action sound in contract.

In its complaint, Tennison sued CCO for breach of contract, and sued Mr. Thomas for tortious interference with a contract and inducement to breach a contract. Tennison also sought injunctive relief in its amended complaint "[f]or the unpermitted and illegally constructed billboard to be removed at the expense of Defendants." Similarly, in its cross-complaint against Mr. Thomas, CCO sought relief under causes of action for tortious interference with a contract and statutory inducement to breach a contract. In addition, CCO sought injunctive relief to have the allegedly unlawful billboard removed. CCO also sought disgorgement of any ill-gotten profits that Mr. Thomas may have received from the billboard. *See Zirkle v. Kingston*, 396 S.W.2d 356 (Tenn. 1965) ( "Quasi contract (or unjust enrichment) is one of those remedies properly called equitable and cognizable in chancery under its inherent jurisdiction."). The gravamen of CCO and Tennison's respective causes of action is the alleged breach of Tennison's lease agreement with CCO. Thus, the chancery court would have concurrent jurisdiction with the circuit court to adjudicate these claims.

However, even if we assume, *arguendo*, that not all of the damages sought by CCO and/or Tennison are within the chancery court's jurisdiction, it is well settled that "where the chancery court has obtained jurisdiction over some portion of or feature of a controversy it may grant full relief in the same manner as could a court of law." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty Dev. Corp.*, 387 S.W.3d 525, 558 (Tenn. Ct. App. 2012) (quoting *Pruitt v. Talentino*, 464 S.W.2d 294, 296 (Tenn. Ct. App. 1970)); *accord, Industrial Dev. Bd. v. Hancock*, 901 S.W.2d 382, 384 (Tenn. Ct. App. 1995) ("When a court of chancery takes jurisdiction of a case under its inherent jurisdiction it may decide all issues involved in the matter in order to prevent a multiplicity of actions."). Consequently, to the extent that the damages sought may be unliquidated, having taken jurisdiction over the portion of the damages arising in contract, the chancery court may fully adjudicate the matter.

In his brief, Mr. Thomas relies upon the case of *Varno v. Tindall*, 51 S.W.2d 502 (Tenn. 1932), in which our Supreme Court ruled that the chancery court lacked subject matter jurisdiction over the plaintiffs' claims for interference with an oral contract. *Id*. In *Varno*, the disputed contract for the sale of real property was entered by and between the plaintiffs and a

non-party, and the damages sought arose from a wrongful mortgage default. *Id*. The *Varno* case is distinguishable from the instant appeal. Unlike the case at bar, in *Varno*, the plaintiff's claims did not include a breach of contract cause of action.

This fact is important because, as noted by the *Varno* Court, pursuant to Tennessee Code Annotated Section 16-11-102, "when the suit is (1) for an injury, (2) to property and (3) for unliquidated damages, not arising out of a contract **between the parties**, it cannot be brought in the chancery court." *Id*. at 503 (emphasis added). Here, the damages sought by Tennison and CCO arise out of a contract between the parties. Accordingly, we conclude that the chancery court had subject matter jurisdiction to adjudicate the case.

*Tennison Bros., Inc. v. Thomas*, No. W2013-01835-COA-R3-CV, 2014 WL 3845122, at \*6-7 (Tenn. Ct. App. Aug. 6, 2014), *no appl. perm. appeal filed*.

The Trial Court has subject matter jurisdiction to adjudicate Plaintiffs' breach of contract claims. This appears to us to be beyond dispute. It strikes us as illogical that the Trial Court could adjudicate only those claims made by Plaintiffs who signed contracts, but not the claims of next of kin Plaintiffs. All Plaintiffs, both those who signed contracts and those who did not, seek equitable relief regarding location and identification of the remains. As noted by Plaintiffs, Defendants only came into possession of the human remains at issue by virtue of the contracts. In properly asserting its subject matter jurisdiction over Plaintiffs' breach of contract claims and claims for equitable relief, the Trial Court had concurrent jurisdiction to adjudicate the other claims, including those alleged by the next of kin, "in order to prevent a multiplicity of actions." *Id*. We hold that the Trial Court had concurrent subject matter jurisdiction to adjudicate all Plaintiffs' claims.

We next address whether Plaintiffs lack standing to bring this class action. Initially, we note that in the Trial Court's July 2016 order quoted above, the Trial Court describes Defendants' challenge to standing as a "new" issue and that no Defendant had raised the issue of standing, at least at the referenced hearing. Our own review of the record reflects that Defendants did raise standing at least in certain motions filed over the course of the case. The Trial Court's order of November 2015 granting class certification did not explicitly make any findings regarding standing, a point of contention by Defendants on appeal.

At least one named class representative must have standing for a class action to proceed. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000).

-24-

"[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id*. (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)). We need not consider whether all members of the class have standing, simply whether one Plaintiff has standing. Our review of the record reflects that at least one named class representative either signed a contract with a defendant funeral home, was next of kin to the deceased, or both. This is sufficient standing for class certification purposes. We hold that Plaintiffs have standing to bring this class action lawsuit.

We next address whether an arbitration clause contained in some Plaintiffs' or class members' funeral contracts with the MJ Edwards entities defeats commonality for purposes of class certification. MJ Edwards cites Tenn. Code Ann. § 29-5-303(a) in support of its argument that it should be excluded from any class action because it has a right to expedient arbitration instead.

The question of MJ Edwards' arbitration clause already has been addressed by this Court. In the opinion *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800 (Tenn. Ct. App. 2015), we found the MJ Edwards mandatory arbitration clause unconscionable and unenforceable. In the present appeal, MJ Edwards takes the position that our previous decision hinged on the fact that a certain page of the contract was missing, and that other Plaintiffs or class members may have received the whole contract and thus be bound by the arbitration clause. This, according to MJ Edwards, would lead to certain Plaintiffs or class members being picked off for arbitration at a later date. We find this to be speculative. Until or unless such an arbitration demand is made under a valid arbitration agreement, we see no obstacle to class certification arising from an arbitration clause already found to be unconscionable even though MJ Edwards speculates such a clause later may be found enforceable as to some other Plaintiffs or class members because their contracts may have contained an additional page.

The final issue we address is whether the Trial Court abused its discretion in granting class certification. The applicable standard of review is deferential, but not totally so. A trial court's discretion in granting class certification is bounded, among other things, by the requirements of Tenn. R. Civ. P. Rules 23.01 and 23.02. Initially we must consider the four requirements of Rule 23.01: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. The Trial Court made extremely detailed findings as to these requirements as quoted above. We find that the evidence does not preponderate against the Trial Court's factual findings. To review, this case involves a class of contract signees and next of kin relating potentially to over 1,200 deceased persons buried at Galilee, a manifestly sizable number. The issues and defenses are common, and the class representatives' claims are typical of the class if not completely identical in each minute detail. The class representatives share the class interest. Finally,

the Trial Court's thorough certification order, taking into account as it did each requirement for class certification, demonstrated the rigorous analysis necessary for class certification.

With respect to Rule 23.02, the Trial Court found that common issues predominate and that a class action is the superior method for proceeding with this case. The central issue in this case moving forward is whether a funeral home has a duty beyond dropping off human remains at the cemetery. This issue is common to all parties in this case. The Trial Court found it better to proceed toward adjudicating that question as a class action. Given that the alternative potentially is hundreds of separate trials with contradictory results, we agree.

The certification decision is a discretionary one for the Trial Court. We discern no abuse of the Trial Court's discretion in its decision to certify the class in this case. As we find no error by the Trial Court, we affirm the judgment of the Trial Court in its entirety.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellants, and their sureties, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE