IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 26, 2024 Session

## APRIL HAWTHORNE v. MORGAN & MORGAN NASHVILLE, PLLC, ET AL.

**Appeal from the Chancery Court for Shelby County
No. CH-19-1232     Jim Kyle, Chancellor**

_____

**No. W2023-01186-COA-R3-CV**

_____

This is an appeal from a trial court's decision to grant class action certification. Discerning no abuse of discretion in the trial court's decision to certify the class at issue, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ROY B. MORGAN, JR., SP. J., joined.

Darrell E. Baker, Jr., Memphis, Tennessee, and Barry F. MacEntee, Peter D. Sullivan, and Catherine Basque Weiler, Chicago, Illinois, for the appellants, Morgan & Morgan - Nashville PLLC, Kathryn Elaine Barnett, John Bryan Morgan, Morgan & Morgan Nashville Management, Inc., and Morgan & Morgan, P.A.

John Timothy Edwards, Memphis, Tennessee, and Frank L. Watson, III, and William E. Routt, Germantown, Tennessee, for the appellee, April Hawthorne.[1]

_____

[1] Other parties to the broader underlying litigation, who are nominally Appellees in this appeal, have not participated in this appeal concerning class action certification. In a per curiam order filed April 19, 2024, this Court noted that some of these parties had provided notification that they would not be participating in the appeal. As to the remaining Appellees, we noted that, "while these parties did not send affirmative notice of their intent, it appears that these parties have likewise chosen not to participate in this appeal." We thus directed that the appeal "be submitted for decision upon the briefs filed by the parties, the record, and the oral arguments of the parties who have filed briefs."

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

This lawsuit pertains to actions allegedly taken by attorney Kathryn Barnett ("Ms. Barnett") and others in connection with prior class action litigation concerning the Galilee Memorial Gardens cemetery ("the Galilee Class Action"). In a previous appeal, which involved our review of the sufficiency of the operative pleading in the present litigation, we summarized the background of the controversy as follows:

> In the [Galilee Class Action], Ms. Barnett served as lead counsel for a class that alleged several defendant funeral homes had wrongfully abandoned the remains of the class' deceased loved ones at the cemetery. *See Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 528 S.W.3d 524, 527 (Tenn. Ct. App. 2017) (affirming trial court's decision granting class certification in the Galilee Class Action). Under the operative complaint in the present case, which is brought by Plaintiff April Hawthorne, a member of the Galilee Class Action class, it is generally alleged that Ms. Barnett and attorney John Morgan, along with their corporate affiliates, refused to entertain and respond to over $14,475,000.00 in settlement offers made by the funeral home defendants during the pendency of the Galilee Class Action. In addition to contending that the Defendants ignored reasonable settlement offers, the complaint submits that the Defendants "rejected settlement offers at or close to policy limits on the illogical claim that unrelated defendants had agreed to pay more per body," that the Defendants failed to properly consider each funeral home defendant's ability to pay, that the Defendants "rejected settlement offers on the illogical and grossly flawed grounds that . . . an unnamed party[ ] would pay for any judgment as the alter ego" of one of the funeral home defendants, and that the Defendants failed and refused to even communicate settlement offers to the class representatives in the Galilee Class Action.

*Hawthorne v. Morgan & Morgan Nashville, PLLC*, No. W2021-01011-COA-R3-CV, 2022 WL 4298184, at *1 (Tenn. Ct. App. Sept. 19, 2022).

In the above-referenced appeal, we ultimately concluded that claims for legal malpractice and breach of fiduciary duties were "sufficiently well-pleaded in the complaint,"[2] stating that it "appears clear . . . that the Plaintiff has pled facts implicating valid legal theories." *Id.* at *2. In explaining our conclusion on this issue, we noted as follows:

---

[2] We also noted that a claim for punitive damages "was sufficiently pled." *Hawthorne*, 2022 WL 4298184, at *2.

[T]he Plaintiff has accused the class counsel in the Galilee Class Action of having acted recklessly, by among other things, ignoring settlement offers and rejecting them on illogical bases, and of having failed to carry out fundamental obligations owed to represented clients, namely not communicating the fact that settlement offers had been made. Of course, the Plaintiff has asserted that damages resulted from class counsel's failures to act upon the settlement offers such that actual settlements could be achieved.

*Id.* Although an application for permission to appeal was subsequently filed by the Defendants in the case, including Ms. Barnett and attorney John Morgan, the Tennessee Supreme Court denied the application by a per curiam order filed February 9, 2023. The appellate mandate issued the following day.

Upon the remand of the case, the trial court addressed Plaintiff April Hawthorne's request for class certification under Rule 23.01 and Rule 23.02 of the Tennessee Rules of Civil Procedure. Per the operative complaint, Ms. Hawthorne was the "proposed representative of a Class of individuals who were members of the certified Galilee Class Action and who were represented by the Defendants," and in her motion for class action certification, she specifically defined the proposed class as follows:

Plaintiff and all similarly situated persons who were included as class members in the Galilee Class Action Lawsuit (as defined and affirmed in *Wofford v. M.J. Edwards & Sons Funeral Home, Inc.*, 528 S.W.3d 524 (Tenn. Ct. App. 2017), permission to appeal denied, *Wofford v. M.J. Edwards & Sons Funeral Home, Inc.*, No. W2015-02377-SC-R11-CV, 2017 Tenn. LEXIS 483 (Tenn. Aug. 18, 2017)) and who made a valid claim for compensation from the settlement fund paid by all Funeral Home Defendants in said lawsuit.

In referencing the "somewhat unusual posture" of the action, Ms. Hawthorne averred and argued as follows in relation to the proposed class:

Unlike most class actions, the putative class in this case already exists. It was certified . . . in the Galilee Class Action and affirmed on appeal by the Tennessee Court of Appeals. The putative class was advocated for by the very Defendants in this case, who, as Lead Counsel in the Galilee Class Action, argued for and accomplished certification. The class in the Galilee Class Action is the very same class that seeks to vindicate its rights against Defendants in <u>this</u> action. The unfortunate fact of the matter is, after accomplishing certification, the Defendants, including Kathryn Barnett, as Lead Counsel in the Galilee Class Action, committed acts constituting, *inter alia*, legal malpractice against the Class that they certified. Thus, this putative class here is the very same class that was certified and affirmed in

the Galilee Class Action and seeks, in this action, to vindicate its rights against its former legal counsel.

Continuing on, Ms. Hawthorne submitted that it was "wholly disingenuous . . . for Defendants to take the position now that the very class that they themselves advocated for and ultimately certified should not be certified in this action." In further contending that the dispute should be resolved on a class-wide basis, Ms. Hawthorne specifically argued as follows:

> The Defendants successfully certified this class in the underlying Galilee Class Action and now must face the consequences for breaching their duties to the class that they created. The class itself must be certified in this action in order to vindicate its rights against Defendants as Lead Class Counsel in the Galilee Class Action. The underlying Galilee Class is the aggrieved client for legal malpractice purposes, and it would be nonsensical to proceed in this action in any fashion other than on a class basis.

In an accompanying memorandum filed in support of her motion for class certification, Ms. Hawthorne articulated her position as to why the prerequisites to a class action under Rule 23.01 of the Tennessee Rules of Civil Procedure were established. *See* Tenn. R. Civ. P. 23.01 ("One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class."). Regarding the numerosity requirement, Ms. Hawthorne cited a declaration from the principal of the notice and settlement administrator in the Galilee Class Action and noted, among other things, that "a total of 2,148 claims were made by Galilee Class Members related to 773 decedents." According to Ms. Hawthorne, this was the "rare class action where the size and identity of the Class is known prior to the certification of the class," and she stated that "the size of the putative Class extends into the thousands of members, all of whom are identified and whose contract information is readily available to the parties."

As for the requirement that there be questions of law or fact that are common to the class, Ms. Hawthorne submitted that the "legal and factual questions central and common to all claims asserted by Plaintiff concern Defendants' refusal to entertain, respond to, and accept settlement offers made by the Funeral Home Defendants during the trial of the Galilee Class Action and whether Defendants' actions constituted a violation of their duties to the class." In connection with her argument, Ms. Hawthorne discussed how the recovery in the Galilee Class Action was to be distributed on a *pari passu* basis, that is, equally among the class, and in referencing her own declaration, she offered as follows as to her understanding of that point and the allegations of wrongdoing that she was pursuing: "[I]f

- 4 -

the Defendants in this case had not mishandled the settlement negotiations in the underlying Galilee Class Action Lawsuit, then the Galilee Common Fund would be much larger and all the families that have successfully made a claim would all be entitled to share in more money."

Regarding the typicality requirement, Ms. Hawthorne argued that it was satisfied for the same reasons her claims meet the commonality requirement, arguing specifically in part that her claims "are exactly the same as those of the other putative Class members, as all putative Class members face the same injury flowing from Defendants' alleged wrongdoing." As for the adequacy of representation requirement, Ms. Hawthorne argued that she did not have any interest in conflict with or antagonistic to the interests of the members of the putative class and had "no conflict with any other member of the proposed putative Class." Citing her own declaration, she noted that her lawyers had explained to her what it means to be a class representative and noted that she understood her duties and obligations. Further citing again the declaration of the principal of the notice and settlement administrator in the Galilee Class Action, Ms. Hawthorne noted that her claim in the Galilee Class Action was recommended to be approved for payment and that, once approved, she would "receive a portion of the Settlement Fund paid by all of the settling Funeral Homes who contributed money into the common Settlement Fund." As for her counsel, she touted their experience in class action litigation and cited numerous cases in which they had been involved, all in support of her position that they had "the experience and ability to adequately represent the Class here."

Ms. Hawthorne's supporting memorandum also specifically addressed the notion that the case was maintainable as a class action under Rule 23.02(3) of the Tennessee Rules of Civil Procedure, with Ms. Hawthorne contending that (1) the questions of law and fact common to the proposed class members predominated over any questions affecting only individual members and (2) her proposed class action was superior to other available methods for adjudication. As to this latter point, Ms. Hawthorne submitted that proceeding as a class action was superior because common issues would only have to be heard and decided once. In further outlining her position on the superiority question, Ms. Hawthorne argued as follows:

> Individual litigation of the claims of all putative Class members is economically unfeasible and procedurally impracticable. The individual damages incurred by each putative Class member from Defendants' alleged conduct are too small to warrant the expense of individual suits. The likelihood of individual putative Class Members prosecuting separate claims is remote and, even if every putative Class member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Individual members of the putative Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for

varying, inconsistent, or contradictory judgments while magnifying the delay and expense to all parties and to the court system resulting in multiple trials of the same factual issue and creating the possibility of repetitious litigation.

(internal citation omitted).

The Defendants strongly opposed Ms. Hawthorne's motion to certify the class. In part, although the Defendants acknowledged that the distribution of funds in the underlying Galilee Class Action was to occur "equally across the class," they argued that Ms. Hawthorne's claims were not typical of the proposed class in the present case and that, instead of class certification, "[t]he far better approach . . . is to let Ms. Hawthorne pursue her individual claims and recover whatever damages she can prove." Although part of the Defendants' opposition was grounded in the notion that individual questions were connected to the various funeral homes that had been sued as part of the Galilee Class Action, Ms. Hawthorne countered the Defendants' opposition in a reply brief by arguing that a common course of conduct—including the Defendants' failure to consider settlement offers made by the funeral homes—predominated over any individual questions. She further argued that "[t]he questions here pertain to the Defendants' uniform breach of their duties to the certified Galilee Class and the damages suffered by that Class as a result of Defendants' breaches."

During the hearing on Ms. Hawthorne's motion for class certification, her counsel argued that each settlement offer at issue affected the whole proposed class inasmuch as "every plaintiff [class member in the Galilee Class Action] shared and shared alike." Whereas counsel for the Defendants did opine during the hearing that "numerosity could be satisfied" if the trial court certified the same class as the underlying case, defense counsel nonetheless maintained that certification was itself inappropriate, contending that "[t]he most predominant issue in the case is one that varies and differs offer to offer, funeral home to funeral home."

The trial court ultimately found favor in the position advanced by Ms. Hawthorne, and in an order entered on August 9, 2023, it found that "the Motion for Class Certification is well-taken and should be granted." As for the certified class, the trial court adopted the proposed definition offered by Ms. Hawthorne "without alteration," and as discussed in more detail below, the court concluded that "this case meets the requirements for class certification under Rule 23.01 and Rule 23.02 of the Tennessee Rules of Civil Procedure." An appeal to this Court soon followed when the Defendants filed a notice of appeal on August 18, 2023, invoking the authority of Tennessee Code Annotated section 27-1-125.[3]

---

[3] Section 27-1-125 provides as follows:

> The court of appeals shall hear appeals from orders of trial courts granting or denying class certification under Rule 23 of the Tennessee Rules of Civil

**DISCUSSION**

On appeal, the Defendants contest the trial court's grant of class certification, and through the raised issues in their briefing, they submit that the trial court failed to conduct the appropriate review and "rigorous analysis," that Ms. Hawthorne lacks standing to act as a class representative, and that the requirements of Rule 23.01 and 23.02 of the Tennessee Rules of Civil Procedure were not established. For the reasons discussed herein, we discern no error in the trial court's decision to certify the class.

"A trial court's decision on class certification is entitled to deference." *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 528 S.W.3d 524, 537 (Tenn. Ct. App. 2017) (quoting *Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *3 (Tenn. Ct. App. Feb. 23, 2011)). Indeed, as the decision to grant class certification is discretionary, the trial court's decision "will stand absent abuse of that discretion." *Id.* (quoting *Roberts*, 2011 WL 662648, at *3). Although, of course, a trial court's discretion "is not unbounded," *id.* at 538 (quoting *Roberts*, 2011 WL 662648, at *3), "a reviewing court cannot second-guess the lower court's judgment or merely substitute an alternative it finds preferable." *Id.* at 537 (quoting *Roberts*, 2011 WL 662648, at *3). Moreover, "a trial court's certification decision must stand if reasonable judicial minds can differ about the soundness of its conclusion." *Id.* (quoting *Roberts*, 2011 WL 662648, at *3).

In this state, "Rule 23 of the Tennessee Rules of Civil Procedure governs class action certification." *Id.* at 538 (quoting *Roberts*, 2011 WL 662648, at *4). The proponent of class certification has a "two-fold" burden. *Id.* (quoting *Roberts*, 2011 WL 662648, at *4). "The proponent must first satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23.01." *Id.* (quoting *Roberts*, 2011 WL 662648, at *4). Then, "[t]he proponent must . . . establish the class action is maintainable under Rule 23.02." *Id.* (quoting *Roberts*, 2011 WL 662648, at *4).

Regarding the referenced numerosity, commonality, typicality, and adequacy of representation requirements, Rule 23.01 provides specifically as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

---

Procedure, if a notice is filed within ten (10) days after entry of the order. All proceedings in the trial court shall be automatically stayed pending the appeal of the class certification ruling.

Tenn. R. Civ. P. 23.01.

As for the maintainability of a class action if the prerequisites of Rule 23.01 are satisfied, we note—as is relevant to the present dispute—that Rule 23.02 provides for certification of classes in circumstances where

> the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

Tenn. R. Civ. P. 23.02(3).

In analyzing class certification issues regarding these rules and requirements, Tennessee courts often look to federal court decisions involving Rule 23 of the Federal Rules of Civil Procedure for guidance. *See Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *2 (Tenn. Ct. App. June 29, 2007) ("Although there are not a large number of reported opinions from Tennessee courts on class action certification, federal courts have frequently dealt with the issues surrounding class certification under the federal rule, which is substantially the same as the state rule, and which therefore may be consulted as persuasive authority."). In that vein, we note that our courts, like the federal courts, have demanded that a "rigorous analysis" accompany class certification decisions. *See, e.g.*, *Wofford*, 528 S.W.3d at 539 (noting that this Court has discussed the "need for a 'rigorous analysis'" accompanying class certification); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (noting that certification is proper only upon a rigorous analysis). Although it may be necessary for a court to probe behind the pleadings before adjudicating a certification question, *Comcast Corp.*, 569 U.S. at 33, we have noted that the extent of the rigorous analysis necessary for a decision on class certification "depend[s] upon the claims and defenses presented, the type of class certification requested, the issues raised regarding the compliance with the rule's requirements, the members of the purported class, and other questions presented by the particular case and the requirements of Rule 23." *Rogers v. Adventure House LLC*, 617 S.W.3d 542, 552 (Tenn. Ct. App. 2020) (quoting *Wofford*, 528 S.W.3d at 540). The trial court must "conduct its own inquiry into whether the requirements of Rule 23 have been met." *Id.* (quoting *Wofford*, 528 S.W.3d at 540).

Although the Defendants assert that the trial court failed to conduct an appropriate

rigorous analysis incident to the grant of class certification, we respectfully disagree. Based on our review of the record, certification of the class did not, as the Defendants appear to suggest, mechanically follow by mere dint of the fact that a class had been certified in the Galilee Class Action. Rather, the record reflects that the trial court gave detailed consideration as to the propriety of class certification *in this action*. Indeed, after the parties submitted papers and competing materials, including declarations, pertaining to Ms. Hawthorne's motion for class certification, a hearing on class certification was held, following which the trial court then entered a thorough order that considered the respective requirements of Rule 23.01 and the maintainability of the class under Rule 23.02. The trial court's analysis, which we highlight in further detail below, reflects that it gave detailed consideration to these legal requirements and the claims being asserted by Ms. Hawthorne. In our view, the order granting certification reflects that the court fulfilled its responsibility to determine whether Rule 23's requirements were in fact met.

As to the Defendants' raised issue concerning standing, we have previously noted that "[a]t least one named class representative must have standing for a class action to proceed." *Wofford*, 528 S.W.3d at 542. For a claim to be asserted, a named plaintiff must have suffered the injury that gives rise to the claim. *Id.* Here, the Defendants submit that Ms. Hawthorne lacks standing to pursue all of the wrongdoing alleged and is limited to seeking recovery stemming from negotiations pertaining to just one of the funeral homes at issue in the Galilee Class Action. Yet, as the trial court recognized, Ms. Hawthorne was impacted by all of the alleged wrongdoing just as all other members of the proposed class were and was "in the same situation." The trial court held that "Plaintiff Hawthorne unquestionably has standing," noting in part that the class members in the Galilee Class Action had shared in the entire recovery. As the trial court further reasoned in support of its conclusion on this issue, "[t]o the extent that [the] total settlement fund was reduced by Defendants' misdeeds, Plaintiff has been injured in the same way and to the same extent as every other Class Member." We agree.

Although the Defendants assert that Ms. Hawthorne's claims do not satisfy the requirements for class certification, we discern no error in the trial court's conclusion that the proposed class be certified. As to the numerosity requirement, we note that the trial court initially stated as follows:

Under Rule 23.01 of the Tennessee Rules of Civil Procedure, class certification is appropriate when the class is so numerous that joinder of all members is impractical. "When class size reaches substantial proportions, however, the impracticability of joinder requirement is usually satisfied by the number alone." "There is no strict numerical test for determining impracticability of joinder. Rather, '[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.'" "Thus, when the number of class members exceeds forty, the numerosity requirement is generally deemed satisfied." Other factors to

- 9 -

consider include the need to avoid a multiplicity of actions and the interests of judicial economy.

(internal citations omitted).

Noting that it found "numerosity is satisfied," the trial court continued by analyzing the matter as follows:

> The members and identities of the putative Class here, which are identical to the class in the Galilee Class Action Lawsuit, were determined in the underlying Galilee Class Action Lawsuit. There, this Court appointed CMM Settlement Solutions, LLC ("CMM") to act as Notice and Settlement Administrator in the Galilee Class Action Lawsuit. "In connection with CMM's duties and responsibilities as Notice and Settlement Administrator, CMM published and mailed all Notices in the Galilee Class Action Lawsuit, including the original Notice of Class Certification that allowed for opt-outs." (Declaration of F. Scott Conaway, principal of CMM Settlement Solutions, LLC, ¶ 2, a copy of which is attached to Plaintiff's Motion for Class Certification as **EXHIBIT D**). In addition, CMM "published and mailed all Notices related to three (3) separate settlements with various groups of funeral homes that occurred at different times throughout the case" and "sent Class Notice to all known persons meeting the Class definition contained in Chancellor Kyle's November 4, 2015 Order . . . and otherwise fulfilled all of its duties and responsibilities related to the dissemination of the proposed class Settlement notice." (Conaway Decl. ¶¶ 2-3). "CMM also processed all claims that were initially made related to all three (3) groups of settlements." (Conaway Decl. ¶ 3). "CMM mailed the Court approved Settlement Notice and Claim Form to one-thousand and ninety-four (1,094) Class Members and published Notice in various local publications." (Conaway Decl. ¶ 4).

> As a result of all of these efforts, a total of 2,148 claims were made by Galilee Class Members related to 773 decedents taken to Galilee for burial. (Conaway Decl. ¶ 4). "CMM has a list of all Class Members who timely made claims, along with their mailing addresses, telephone numbers and other relevant contact information." (Conaway Decl. ¶ 4). "The Class Members that are going to potentially share in the Settlement Fund can each be identified and contacted and have to be because they have to physically be able to receive a settlement check from the Settlement Fund" in Galilee Class Action Lawsuit. (Conaway Decl. ¶ 4).

> "CMM was also charged with compiling a spreadsheet and ensuring that each claim complied with the terms of the settlement and to make a

provisional recommendation on whether the claim should be approved or denied or stated differently, whether or not a particular Class Member timely filed a claim and provided the proper requested documentation and otherwise met the class definition all of which was required to qualify to share in the Settlement Fund." (Conaway Decl. ¶ 5).

This is accordingly the rare class action where the size and identity of the Class is known prior to the certification of the class. In this instance, the size of the putative Class extends into the thousands of members, all of whom are identified and whose contact information is readily available to the parties. The numerosity requirement is satisfied. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" (quoting 3B Moore's Federal Practice ¶ 23.05[1] at n.7 (1978)).

In our opinion, the trial court's analysis is sound.[4] Numerosity is established.

Turning to the question of commonality under Rule 23.01, we note that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)). The "claims must depend upon a common contention," *id.* at 350, and what matters is the capacity to generate common answers, not merely the raising of common questions. *Id.* For purposes of the commonality requirement, a single common question is sufficient. *Id.* at 359. "[T]he existence of separate issues of law and fact, particularly regarding damages, do not negate class action certification." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996).

When addressing whether there were, as required by Rule 23.01(2), "questions of law or fact common to the class," the trial court noted that "the legal and factual questions central and common to all claims asserted by Plaintiff concern Defendants' refusal to entertain, respond to, and accept settlement offers made by the Funeral Home Defendants during the trial of the Galilee Class Action and whether Defendants' actions constituted a violation of their duties to the class." The trial court went on to note that "[i]t is universally accepted that once a class is certified under Rule 23 and class counsel is appointed to represent the class, class counsel owes a fiduciary duty to all absent class members who

---

[4] Although on appeal the Defendants challenge the propriety of the trial court's numerosity determination, they appeared to take a less emphatic position on the question during the trial court proceedings. Indeed, we note again that, during the certification hearing, defense counsel opined that "numerosity could be satisfied" if the trial court certified the same class as the underlying case.

have not opted out of the certified class," and concluded that "[i]t is axiomatic, then, that once Ms. Barnett and Morgan & Morgan Nashville, PLLC were appointed 'Lead Class Counsel' they represented the entire Class certified in the Galilee Class Action Lawsuit and owed a fiduciary duty to (and held an attorney client relationship with) the entire class." Likewise, the court noted that "Defendants as Lead Counsel had an attorney-client relationship with the entire certified class in the Galilee Class Action." Moreover, as the trial court understood and articulated, the wrongdoing at issue in the asserted claims ultimately impacted *all* class members, and the injury was, in effect, the same across the class:

> [T]he concerns raised by Defendants about individualized claims are misplaced. In the Galilee Class Action, the allocation of settlements to class members were made on a *pari passu* basis of recoveries from any and all Funeral Home Defendants regardless of the amount of money each individual Funeral Home paid to settle and irrespective of whether a given class member did or did not employ the Funeral Home. The class members shared in funds that were paid by Funeral Homes with whom they had no dealings as well as the one Funeral Home that they in fact dealt with. As a result, if the allegations in the complaint are true and proven, the Defendants breached an identical duty owed to each class member.

> . . . .

> The alleged malpractice perpetrated against the Galilee class, if proven true, harmed the same class of people in the same way. The legal malpractice was committed, if proven true, against the class as a whole, and all of its members equally suffered. It defies logic to deal with the questions in this case on an individualized basis.

We agree with the trial court that commonality is established here. The claims clearly depend upon a common contention.

Turning to the typicality requirement under Rule 23.01, we note that the "typicality inquiry focuses on whether the legal and remedial theories of the class representatives are sufficiently similar to those of the unnamed class members." *Rogers*, 617 S.W.3d at 564 (quoting *Roberts*, 2011 WL 662648, at *6). Its purpose is to screen out actions in which the representative party's position is too different from that of other members of the proposed class. *Roberts*, 2011 WL 662648, at *6.

When the trial court determined that the typicality requirement was established, it stated as follows in its order:

> Under Rule 23.01(3) of the Tennessee Rules of Civil Procedure, a

class can only be certified if the claims of the class representatives are typical of the claims of the class members. The typicality requirement is satisfied if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." "The claims and defenses do not have to be identical, so long as a common element of fact or law exists between the claims." "A class representative's claims are typical when there is a common element of fact or law, even if the claims do not involve the same facts or law."

"The essence of the typicality requirement is ensuring that the class representative's interests are aligned with those of the representative group, such that the named Plaintiff will also advance the interests of the class members." "Thus, when class representatives will have to prove essentially the same elements as the remainder of the class, typicality should be found, notwithstanding factual differences between various members of the class."

Here, the typicality requirement is satisfied for the same reasons Plaintiff's claims meet the commonality requirement. Plaintiff's claims are exactly the same as those of the other putative Class members, as all putative Class members face the same injury flowing from Defendants' alleged wrongdoing. The named Plaintiff and the absent class members assert claims under the same legal theories, based on the same allegedly unlawful practice. In all material respects, Plaintiff's claims and the claims of the putative Class arise from the same events and are based on the same legal theories.

(internal citations omitted).

Just as with the commonality requirement, it is clear to us that typicality is also established. Although the Defendants assert that all putative class members do not, as noted by the trial court, face the same injury flowing from the alleged wrongdoing at issue in the case, we discern no error in the trial court's understanding of that issue. As discussed earlier, in connection with Ms. Hawthorne's motion for class certification, she addressed how the recovery in the Galilee Class Action was to be distributed on a *pari passu* basis, that is, equally among the class. Moreover, in referencing her own declaration, she offered as follows regarding the allegations of wrongdoing that she was pursuing: "[I]f the Defendants in this case had not mishandled the settlement negotiations in the underlying Galilee Class Action Lawsuit, then the Galilee Common Fund would be much larger and all the families that have successfully made a claim would all be entitled to share in more money." Ms. Hawthorne is impacted the same as the other class members because she shared equally with them in the Galilee Class Action.

We next shift our attention to Rule 23.01(4) of the Tennessee Rules of Civil

Procedure and its "adequate representation" requirement. *See* Tenn. R. Civ. P. 23.01(4) (concerning whether "the representative parties will fairly and adequately protect the interest of the class"). It has been noted that there is overlap between the adequate representation requirement and the above-discussed typicality requirement, to wit: if there is an absence of typical claims, the representative has no incentives to pursue other class members' claims. *Rogers*, 617 S.W.3d at 567.

In addressing this requirement, the trial court initially stated as follows:

Rule 23.01(4) of the Tennessee Rules of Civil Procedure requires that the representative plaintiff will fairly and adequately protect the interests of the Class. "To meet this criterion, the class representatives must have common interests with the unnamed class members and it must appear that the class representative will vigorously prosecute the case and protect the interests of the class through qualified counsel." Adequacy is satisfied so long as the class representative has no "antagonism of interest" with the absent class members.

Here, the adequacy requirement is satisfied in that Plaintiff Hawthorne, the putative Class Representative, has a sufficient stake in the litigation to vigorously prosecute her claim on behalf of the putative Class members, and Plaintiff's interests are aligned with those of the putative Class. There are no defenses of a unique nature that may be asserted against Plaintiff individually, as distinguished from the other members of the putative Class, and the relief sought is common to the putative Class. Plaintiff does not have any interest that is in conflict with or is antagonistic to the interests of the members of the putative Class, and she has no conflict with any other member of the proposed putative Class.

Plaintiff Hawthorne is a class member of the Galilee Class Action Lawsuit class and has shared in the settlement proceeds that each of the settling funeral home defendants have paid into a common fund to settle that lawsuit (the "Galilee Common Fund"). The Galilee Common Fund contains money paid by each of the funeral homes that were sued in the Galilee Class Action Lawsuit. The Court ruled in the Galilee Class Action Lawsuit that all qualifying family members are entitled to share in the Galilee Common Fund, regardless of which funeral home each family member actually hired to bury their loved one at Galilee Cemetery. Plaintiff Hawthorne is accordingly in the same situation as the rest of the class members that have successfully made a claim in the Galilee Class Action Lawsuit.

(internal citations omitted).

- 14 -

Continuing on, and in specifically addressing the adequacy of Ms. Hawthorne's retained counsel, the trial court noted that counsel for the proposed class "are well-respected members in good standing of the Tennessee bar and have a background in prosecuting complex and class action lawsuits." Whereas the Defendants had maintained—and still do—that a conflict with one of Ms. Hawthorne's counsel was connected to the underlying case, the trial court was not persuaded, holding that "Defendants' argument that Frank L. Watson, III cannot serve as class counsel due to a conflict is not well taken." The trial court noted that "Mr. Watson is not a witness to the facts underlying this case" and also noted that he "did not represent the Galilee Class."

Having reviewed the issue, we are in agreement with the trial court that adequacy of representation is established. There is no antagonism of interest here. As the trial court recognized, Ms. Hawthorne is in the same position as the rest of the class members that have a valid claim in the Galilee Class Action: her equal share is less because of the alleged wrongdoing. She clearly has a sufficient stake to prosecute the matter on behalf of the class, and our foregoing discussion on typicality is persuasive to our reaching this conclusion. Moreover, as referenced earlier, a declaration from Ms. Hawthorne attested to her understanding of her duties and obligations and that her lawyers had explained to her what it means to be a class representative. We are also in agreement with the trial court's specific finding that Ms. Hawthorne's counsel are "more than capable of providing adequate representation for the purported Class." As we referenced earlier in this Opinion, Ms. Hawthorne supported her motion for class certification by touting her counsel's class action experience and citing numerous previous cases in which they had been involved.

Having determined that the prerequisites to class certification in Rule 23.01 are established, we turn our attention to the trial court's determination regarding predominance and superiority under Rule 23.02. The predominance requirement under Rule 23.02(3) is established when "the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members." Tenn. R. Civ. P. 23.02(3). The underlying inquiry is one that "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Bloodworth*, 2007 WL 1966022, at *18 (noting that the predominance analysis is one that tests whether the class is "sufficiently cohesive").

The predominance requirement is "more demanding" than the commonality requirement. *Windsor*, 521 U.S. at 624. Although the existence of individual issues does not foreclose certification, "common issues should predominate over, and be unencumbered by, any individual claims or issues involved in the action." *Bloodworth*, 2007 WL 1966022, at *14. As this Court previously discussed:

> In order to determine whether common questions predominate, a court
> must examine the cause of action asserted on behalf of the proposed class.

- 15 -

*Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d at 1234. After identifying the relevant legal and factual questions, the predominance inquiry requires a determination that common issues of law or fact exist and, then, a determination that such common issues predominate. That inquiry must focus on the relationship between common and individual issues. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir.1998). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys.,* 211 F.3d at 1234.

*Id.* at *17.

Of course, a finding of predominance does not in and of itself warrant the maintenance of a class action under Rule 23.02(3). For a class to be maintainable under Rule 23.02(3), the court must also conclude that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Tenn. R. Civ. P. 23.02(3). As we previously discussed:

In addition to finding that the common questions predominate over individual questions, the court making a certification decision under the common question subsection must also determine and find that class action is the superior method for determining the claims. "The rule requires the court to find that the objectives of the class-action procedure really will be achieved in a particular case." 7AA Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1779. As set out above, the rule itself lists four factors that are relevant to the questions of predominance and superiority. Essentially,

A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases certified under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis. In many ways the factors listed in the rule are interdependent and overlapping both among themselves and with the class-action prerequisites in Rule 23(a). In this way, they simply emphasize the policy objectives of the rule.

7AA Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1780.

As its name suggests, the test under the superiority requirement is that the class action vehicle must be better than, not merely as good as, other

- 16 -

methods of adjudication. *See Perez v. Metabolife Int'l., Inc.,* 218 F.R.D. 262, 273 (S.D.Fla.2003) (declining to certify class even though there were some common issues that could be tried on a class wide basis because "any efficiency gained by deciding the common elements will be lost when separate trials are required for each class member in order to determine each member's entitlement to the requested relief"). The burden of showing that a class action is more efficient or more fair rests with the class certification proponents. *Henry Schien, Inc. v. Stromboe,* 102 S.W.3d 675, 689 (Tex.2002).

*Id.* (internal footnote omitted).

Here, in determining that the respective requirements of predominance and superiority were established, the trial court stated in pertinent part as follows:

In this case, the Court finds that common questions of law and fact predominate over those affecting only individual members. The claims of each putative Class member depend upon numerous factual and legal questions.

To the extent that any questions in this case pertain to individual Class members, such questions are marginal and tangential and cannot defeat certification here. The Court finds that the Defendants' argument that a class action trial will require multiple "mini trials" to determine whether each individual settlement offer should have been accepted does not defeat certification. Indeed, it does not defeat certification because proof on each settlement offer and whether it should have been accepted will be necessary regardless of how this case is tried, whether it is tried by Plaintiff Hawthorne individually or on a class-wide basis. Even if Plaintiff Hawthorne proceeded with her case individually, the same factual questions related to the settlement offers made by funeral homes in the Galilee case would be before the Court, particularly considering that each of the Galilee class members shared equally in all of the settlement money obtained for the class. Moreover, if there are individual trials, the jury in each trial would consider the same offers but may come to inconsistent conclusions, *e.g.,* the jury for one Plaintiff may determine that a funeral home's offer should have been accepted while the jury for another plaintiff may find that the same offer was rightly rejected. Class certification ensures that the Court avoids inconsistent adjudications on these issues. The Court finds that it is appropriate to resolve these factual questions on a class-wide basis. The questions of law and fact common to the putative Class plainly predominate over questions affecting individual members.

. . . .

The Court finds that a class action is the superior method for adjudicating this controversy. Importantly, a class action need not be perfect; it must merely be the superior method. "Tennessee courts recognize that class actions are superior where, as here, the Defendants' liability can be determined on a class-wide basis because the claims rest on a single course of conduct which is the same for all class members." Proceeding with this matter as a class action would be superior here because "the common issues will only have to be heard and decided once, thereby promoting judicial efficiency."

Individual litigation of the claims of all putative Class members is economically unfeasible and procedurally impracticable. The individual damages incurred by each putative Class member from Defendants' alleged conduct are too small to warrant the expense of individual suits. The likelihood of individual putative Class Members prosecuting separate claims is remote and, even if every putative Class member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Individual members of the putative Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments while magnifying the delay and expense to all parties and to the court system resulting in multiple trials of the same factual issue and creating the possibility of repetitious litigation.

(internal citations omitted).

We agree with the trial court that predominance and superiority are respectively established under Rule 23.02(3). As we have noted herein, Ms. Hawthorne is impacted the same as the other class members by virtue of the alleged wrongdoing because she shared equally with them in the Galilee Class Action, and just as the trial court concluded, there is thus in our view a predominance of common questions among the certified class here. Indeed, although the Defendants take issue with the finding, we highlight the following statement from the above excerpt of the trial court concerning predominance: "Even if Plaintiff Hawthorne proceeded with her case individually, the same factual questions related to the settlement offers made by funeral homes in the Galilee case would be before the Court, particularly considering that each of the Galilee class members shared equally in all of the settlement money obtained for the class."

The trial court's analysis on the superiority question is also sound in our view. Although the Defendants emphasize that no other case has been filed arising from the Galilee Class Action, we do not regard such an argument to be persuasive. In fact, such a

consideration has been referenced as meriting a conclusion contrary to the one suggested by the Defendants. *See, e.g.*, *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 265 (N.D. Cal. 2015) (noting that the absence of individual suits is an indication that each class member's potential recovery does not provide the incentive to bring a solo action); 7AA Mary Kay Kane, Fed. Prac. & Proc. § 1780 (3d ed. June 2024 update) ("[T]he existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action.").

## CONCLUSION

For the reasons stated herein, we discern no abuse of discretion in the trial court's decision to certify the class at issue. The order granting class certification is therefore affirmed.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE